Judge Trimble,*
delivered the following opinion of the court Coleman and wife, exhibited a bill in the high court of chancery, in Virginia, against John Rogers, to litigate and ascertain their claim to certain slaves and land, and the proceeds thereof; and against Thomas Pollard, who had purchased the land of Rogers, and was indebted for a part of the purchase. Rogers, at the time of the exhibition of the bill, was a resident of Kentucky, as was stated in the bill; and an order for his appearance, was directed by the chancellor to be published according to the statute of Virginia in such pases provided.- — -
The effects of the defendant, John Rogers, in the hands of the other defendant, Pollard, were stayed and injoined ; and the record and proceedings in a former puit in chancery, wherein said Pollard was complainant, and said Rogers was defendant, were refered to as a part of Coleman’s bill.
The defendant, Rogers, not having entered his appearance to the suit of Coleman and wife, the bill was taken as confessed, as to him ; and an inquiry was certified to a court of common law, to be decided by a ju *414 ry, whether Larkin Rogers had attained full age, at, or before his death ; that being the question upon which the claim of Mrs. Coleman depended. The jury env-panneled, found the time of his birth only ; and refuse^ to find the time of his death, for want of evidence,
verdict being certified to the court of chancery,, was set aside by the chancellor, and another inquiry sent down ; upon which the jury found, in May 1802, that Larkin Rogers was a minor at his death. Upon this, verdict, certified, the chancellor, in September 1802, pron°unced a decree in favor of the complainants ; the appearance of the defendant, Rogers, having never been, entered to this suit; which decree, according to, the statute of Virginia, might be opened by the defendant, at any time within seven years next after the decree.r,en-, dered, (unless, within that time, in the case of an; absent debtor, upon his return to the country, the complainant, should serve him with a copy of the decree ; in which, case, twelve months from the service, are allowed.; for appearing, and petitioning to have the cause re-heard). Upon this decree, thus rendered, Coleman and, wife, within the seven years, commenced an action in the Fay-ette circuit court, of this state; in which cause, the defendant, Rogers, offered evidence of the time at which; Larkin Rogers died, for the purpose of impeaching the said decree, or discharging himself from the action ; which evidence that court refused to receive, taking the decree, and record of the proceedings, and evidence on which it was founded, as conclusive evidence on behalf of the plaintiff in the action; and from the judgment at common law, thus rendered upon the said decree, Rogers has appealed to this court.
If it had been a decree or judgment of the court of a» foreign country, it is conceded, that evidence to im-. peach or avoid the demand, founded thereon, would have been admissible ; but, as it is a decree of a court of a sister state, certified according to the constitution of the United States, and the aet of congress made in4 pursuance thereof, it must be inquired, whether the;; effect given to it by the court, was the proper one.
The constitution of the United States, article 4th, section 1st, declares “ Full faith and credit shall be given in each state, to the public acts, records, and judicial proceedings of every other state. And the congress *415 may, by general laws,-prescribe the manner in which such acts, records, and proceedings, shall be proved, and the effect thereof.” The act of the congress of the United States, passed in May 1790 (1 Vol. L. U. S. p. 115), prescribes the manner of the authentication, and then declares, “ The said records and judicial proceedings, authenticated as aforesaid, shall have full faith and credit given to them in every court within the United States, as they have by law or usage, in the courts of the state from whence the said records are or shall be taken.”
Howfarthe judgments of the courts of sister states, shall, when admitted as evidence, be conclusive, or be examinable,is highly interesting; and it is desirable, that it should be settled once for all. As it is desirable,that this intended bond and cement of union, should be regarded in the same relative strength in every state, we have looked into the decisions of the courts of other states ; from whence it appears, unhappily, that the decisions in all the states, are not in unison. We cannot, however, give into such a construction of the constitution of the United States, when using the expressions, “ full faith and credit,” its would assign to the judgment of a sister state, no greater credibility, nor claim from us any greater faith, that the language, precepts, and commands thereof, were orthodox, according to the immutable principles of justice, than if it were the sentence of a foreign heterogeneous government. Such a construction would make that part of the constitution, a mere senseless, dumb article. With a guarantee of a republican form of go-vernmeat, as given by that constitution ; with one common declaration, as to the rights of man in society; withjmmogeneous sentimen ts of general jurisprudence ; and that similarity of trial, and of the evidence admissible on that trial, which prevails in the states ; all of whom have drawn their notions of justice from the same common source ; there can exist no just cause of jealousy against their different tribunals.
To give such faith and credit to the records abroad, as they would have at home, k certainly giving them “ full faith and credit.” The constitution of the United States can require no more ; and the law of congress on the subject, (whether we regard the effect of the authentication, by which the credit and faith is to be demanded, or the effect of the contents of die record) can mean no more nor less.
*416 Placing the judgments of sister states on this gen'efaí equality of faith and credit, throughout the union, by saying they ought to be examined, opened, or impeached, onlyin-thatdegree or extent, in which they would be ^impeached in the State in which they were rendered, ns difficulty can remainjfes to those judgments, where the parties had a fair trial of the merits, by actual appearance and litigation ; or might have had, by reason of the service of the process upon the. person of the defendant, he being then within the actual jurisdiction of the court.
When a fair trial has thus been had, or the means of a full investigation have thus been afforded, it would not only encourage multiplicity of litigation, and excite a disposition to abscond after suit commenced, before thé sentence of the law could be executed, but would be in violation of the plain intention of the constitution of the confederated governments, to suffer the judgments again to be opened, for the purpose of permitting the parties to plead, or shew in evidence, that which might, and ought to have been opposed to the rendering of judgment in the first instance. Such judgments ought to be .conclusive, and enforced without inquiring into the grounds of them, or into the demeanor of the court or jury, who decided them ; except so far as they were in-quirable into by the same tribunal, or those of co-ordinate powers, in the state from whence such judgments are, or may be certified.
But how far judgments and proceedings, founded on certain statutary provisions, are conclusive, and how far they may be inquired into in the courts of the samé state, will often be subjects of difficulty.
These difficulties must increase, where the defendant has been subjected to a judgment, without any service of process on him personally ; or without his having entered an appearance, where the process was not served upon his person ; as in the cases of foreign attachment; of of constructive service of process ; as by publication against the defendant, (as in the present case) united with an attachment or sequestration of the effects of the defendant, or without it. Where the trial is evidently txparte ; where the fundamental principles and notions of a trial, have been only colourably observed ; and the defendant' has been condemned unheard, and without any other than a constructive notice, to appear and gain- *417 lay the demand; it would be too rigid and unjust, to Say that such cases were contemplated by the constitution, and by the act of congress. A sentence thus obtained, where (to usé the language of a great judge) the defendant has had no better representative than a blanket, or a log ; and in defiance of that maxim, “ hear both parties,’’ deserves not the appellation of a judgment ; it seems to be rather a silent and necessary act of the court.
These cases seem to have been generally agreed, by those who have expressed judicial opinions on the subject, to form exceptions to the general rule ; although their reasons havé not been entirely satisfactory. They have considered the question as rather confined to the particular case, and state regulation in each individual case, than upón principles which would apply equally to áll cases óf that description
In (Dallas’s Reports-, p. 264; 1 Vol.) Phelps & al. vs. Holker & al. it was adjudged by the supremé court of Pennsylvania, that a judgment in a foreign attachment; ⅛ the state of Massachusetts, was not conclusive evidence between the same parties in Pennsylvania; being considered as a proceeding in rent, and hot to be extended farther than the property attached ; it is, therefore; said by chief justice M’Kcan, the articles of confederation ought nót to be permitted to work such evident injustice, and mischief, as those contained in the doctrine contended for on the other side.
In the case of Kibbe vs. Kibbe, decided in the state ofX Connecticut, the court would not sustain an action át all; on a judgment Obtained in Massachusetts, where the defendant had not been served with process ; saying, however, that full credence ought to be given to the judg-intents of courts within the United States ; where both parties were within the jurisdiction of the courts, at thé Commencement of the suit; were duly Served with process ; and had, or might have had, a fair trial.
jurisdiction of the courts, is spoken of, and a proper attention to that subject, will furnish an easy Solution of those cases where the party was not served, personally, with process. All rights are growing out of, or attached to the person, or things, which are the subjects of property : and the jurisdiction of every court, must attach, «ither because the person is within the sphere of & au *418 thority; or because the property or effects of the pef-son) or that which is the subject matter of the, controversy, is within that sphere. If the defendant is served, within the proper limits of the state, with the process of the court of that state, then the jurisdiction attaches to the greater and most comprehensive subject; the the lesser is included : the right which issues out of property, or the person, is, and ought to be, conclusively determined and obligatory upon the parties, wheresoever they might go within the United States. The action being against the person, the judgment of his being concluded, ought to be as transitory as his person ; nor ought he to be permitted, by removal of his person, to evade the force of the sentence.
But where the jurisdiction attaches only in rem, the judgment cannot rightfully be said to extend beyond the subject, and bind the person of the defendant, not only as to his right in that particular thing, but as to his personal rights generally. The utmost extent to which such a judgment could be claimed, as conclusive, and to be enforced, would be within the territorial limits of that state, or sovereignt}', which rendered the judgment. Let us examine the consequences to which a contrary doctrine would lead. If the submission of the plaintiff to the jurisdiction of the court, and obtaining a judgment by process in rem, shall extend that judgment beyond that subject, and conclude the rights of the defendant, generally, wheresoever he may be, without the limits of that state, and within the United States ; what safe-guard has a defendant in anyone of the states, against a plaintiff, who would gratuitously bestow, in his absence, an eagle, or a blanket, or a spoon, for the purpose of obtaining a judgment, by specious and colourable testimony, to conclude him, by a judgment to a large amount, to be sent to the state whereof he is a resident, duly authenticated, as soon as the time has expired, within which, by the lex loci, the judgment or decree might be opened ?
But if the person or submission of the plaintiff, on the one part, and an inconsiderable subject, to which the right of the defendant is said to attach, either rightfully or colourably only, is such a representation of the parties before the court, as to give the sentence general efficacy, upon all the personal rights of die defendant, as *419 welt as over his. general property, to be enforced with blind obedience,, by every court in the Union; there is no sound distinction, to be taken between such a partial constructive service of process on the defendant, and a service upon him, by a publication in the newspapers, and, chyrch. or amrt-house doors, only : indeed, the latter constructive service, would be the more plausible of the two, as being mor¡e public, and mor e likely to attract his attention.
If the regulation, as to opening the decree in- seven years, will do, to give ij: the cloak of justice,, why will not seven months do ?
Thus, one-state may, by her municipal regulations, exercise a jurisdiction, indirectly, extra territorium, and enforce the claims of her own.citizens, upon the persons, of the citizens, of the rest of the states, barely by a formal application to one of the courts of justice of a sister state ; which court must tamely yield to the conclusive evidence in the certified, volume of epcparte testimony, and a sentence thereupon,
Whence is this consolidating principle derived ? Is it from that part of the constitution of the federal government, which declares, that “the citizens of each state, shall be entitled to all the privileges and immunities of citizens in the several states” ? Or from that part which guarantees to each state, its sovereignty, and a. republican form of government ? (a)
If; we look at the policy of congress oh this subject, with respect to their own courts, we shall find,' that no suit against a citizen of the United States, shall be sustained in any other district than that whereof he is an inhabitant, or in which he may be found at the time of the service of the process ; and that no person shall be arrested, or held to bail, in any other district thau that whereof he is. an inhabitant (b). •^JSreitHef""tHe reason nor the spirit of the constitution, or of the act of congress, require that such faith and credit should be given to these sentences of courts, as to be, absolutely conclusive upon the defendant, who, although named, was, in lact^ never a party, but by forced constructionii^.Such a construction appears most favorable to the harmony of the states, and to the promotion of public justice, which were ends intended by the provisions of the constitution. The Sjimp impartial regard to justice, which secures a plain- *420 tiffagainst oppression, fraud, and accident, by receiving! the record as full evidence against a defendent, who voluntarily absconded after he was served with process, ought, on the other hand, to secure a defendant from a plaintiff, who knowingly institutes his suit against his adversary, when absent, and procures his condemnation, without a hearing. .
With respect to the case now before the court, it may be observed, that greater faith and credit was given to the record in the court below, than belonged to it in the state of Virginia. There it was inquirable into, within seven years from the time of pronouncing the decree ; and, if inquirable into there, it certainly was inquirable into here: indeed, it would seem most proper to expect, that the courts of common law would not sustain an action at all, within the seven years, upon a decree which was by law but inchoate and inconclusive, as to the rights oT the defendant, and only interlocutory in its nature. If they would, the multiplication of suits would be the consequence,
Suppose judgment obtained, in an action of debt, up.on this conditional foundation; the defendant, within the time limited, petitions and opens the decree ; he must then file his cross bill, or institute a proceeding in nature of a cross bill, to be relieved from the common law judgment ; and if, in the mean time, a judgment had. been obtained here, he must have filed his bill in chancery, for relief against that. The objection used against an examination here, is, that it cannot be had in the same manner as in Virginia, This depends upon the will of the plaintiff, in electing a court of commqn law, pr of chancery, in which to prosecute his suit. If, because he chooses the common law side of the court, his. evidence is to be conclusive, then plaintiffs will never elect to sue in chancery. Thus justice must be adven-, tured on the cast of the plaintiff’s interested will, or be. sacrificed as a burnt offering to its own forms; the substance will be made to yield to, and follow the shadow.
But if, by that argument, it were intended, that even upon a bill in equity, to enforce such decree, its merits Could not be inquired into by the chancellor here ; but; that the defendant should be sent to the very court in ^hich the original proceeding was commenced against^ *421 Jilm ; then" it amounts to the position, that one of the state sovereignties has no power to protect her citizens from the unjust demands set up ex parte, against them in the courts of any one of the states ; and, that the citizens of all the states may be drawn within the vortex of one state jurisdiction, to litigate and defend their rights.
This court is not called upon, by the assignment of error, to determine whether the record of the proceedings and decree, in Virginia, would have supported an action of debt, or on the case ; but only, whether the defendant below, ought to have been permitted to go into, and impeach the merits of the decree ; or if the said decree was final and conclusive evidence.
Considering the decree as made without personal service of the process, and without the appearance of the defendant to the suit; as a proceeding in rem ; or as a proceeding under the statute of Virginia; the record was not conclusive between the parties ; the defendant in the court below, ought to have been permitted to impeach ⅛- — :—Judgment reversed.

 Abfttit, Eswaxbs, Ch, J.

 Art.iv, 5 z 4-

 Vol.1 U. S. 55.